**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ADRIAN VLAD, ET AL., | ) | CASE NO. 1:19CV2024 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| DGI TRUCKING, INC., | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant DGI Trucking, Inc.'s Motion to Stay Proceedings Pending Arbitration. (ECF # 5). For the following reasons, the Court grants, in part, Defendant's Motion to Stay. The Court will stay the litigation in order to allow the Magistrate Judge assigned to the case to hold an evidentiary hearing on whether the parties clearly and unmistakably agreed to delegate questions or arbitrability to the arbitrator. The Magistrate upon completion of the evidentiary hearing shall provide the Court a Report and Recommendation on the issue for the Court's approval.

According to Plaintiffs' Complaint, Plaintiffs Adrian Vlad ("Vlad") Lucian Solomon ("Solomon"), Daniel Varvaruc ("Varvaruc") and Daniel Tarog ("Tarog") are owner-operator, independent truck drivers who entered into lease agreements with Defendant DGI Trucking,

Inc. ("DGI"), an authorized carrier.  Under federal regulations, authorized carriers like DGI may transport interstate using equipment it does not own so long as the equipment is covered by a written lease that conforms to the requirements of 49 CFR § 376.

Each Plaintiff entered into multiple lease agreements with DGI.  According to Plaintiffs,  DGI failed to include several provisions in the lease agreements required under law.  Plaintiffs further contend DGI breached these lease agreements, causing injury to Plaintiffs.

**DGI's Motion to Stay**

According to DGI, each Plaintiff's lease agreement with DGI contained a mandatory arbitration clause requiring all disputes arising out of the lease agreements be determined by arbitration.  DGI concedes that because the lease agreements are contracts of employment they are outside the purview of the Federal Arbitration Act ("FAA") as held recently by the United States Supreme Court in *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 541 (2019).  However, DGI contends they are still subject to Ohio's Arbitration Act which contains the same strong presumption in favor of enforcing arbitration agreements and does not exclude contracts of employment.  Furthermore, the lease agreements expressly state that " wherever there is no applicable Federal Law this lease shall be governed by the laws of the State of Ohio."  (Application of Lease, Interpretation (sic) and Remedies, Section C).

DGI further contends that the arbitration clause in the lease agreements contains a delegation clause delegating questions of arbitrability to the arbitrator.  Because the lease agreements agree that the arbitrations will be "in accordance with the Commercial Arbitration Rules of the AAA," and those AAA rules reserve questions of arbitrability for the arbitrator,

this exhibits the clear intent of the parties to delegate questions of arbitrability for the arbitrator, according to DGI.

Even if the Court should decide the question of arbitrability, DGI argues it should find the arbitration agreements are enforceable as Ohio law presumes the agreements valid and enforceable. Plaintiffs admit they entered into the agreements and, in fact, seek to enforce them via their breach of contract claims and DGI contends they were given the opportunity to review and negotiate the terms of the agreements.

DGI also argues that all of Plaintiffs' claims are subject to arbitration as all arise out of the lease agreements. Also, due to the delegation provision, DGI asserts that any questions concerning the scope of the arbitration clause must also be determined by the arbitrator.

Finally, DGI asserts there are no statutory prohibitions against arbitration.

**Plaintiffs' Opposition**

According to Plaintiffs, they are all native Romanians who lack fluency in English. Only one Plaintiff has basic English reading skills while the others do not read English. All four Plaintiffs have no legal training and are unfamiliar with the United States legal system in general and the arbitration system specifically. DGI's owners are also Romanian, speak and write Romanian and could have provided the lease agreements in Romanian but chose not to do so. They never explained the lease agreements to Plaintiffs and never explained to Plaintiffs the rights they were giving up by agreeing to arbitrate nor did they explain the costs of arbitration to Plaintiffs. All Plaintiffs attest they did not know the lease agreements contained arbitration clauses nor were they given the opportunity to negotiate the terms of the lease agreements nor could they have had them removed. All attest they had no choice but to

3

sign the lease agreements as DGI presented the agreement as a "take it or leave it" proposition.

Plaintiffs assert their claims are not subject to arbitration because the lease agreements expressly provide that federal law governs. Because Plaintiffs' claims include claims under the Truth-in-Leasing federal regulations and both sides agree the FAA does not apply to employment contracts like the leases herein, these claims are not arbitrable according to Plaintiffs.

Plaintiffs claim the Court must determine whether the claims are arbitrable because the presumption under the law is questions of arbitrability are for the Court and not the arbitrator to determine. Furthermore, Plaintiffs dispute Defendant's contention that they clearly and unmistakably agreed to let the arbitrator determine arbitrability. Therefore, the issue of arbitrability must be determined by the Court.

The Plaintiffs next assert that the Court should find the arbitration clauses unconscionable and unconstitutional as they are both procedurally and substantively unconscionable.

Finally, Plaintiffs contend the arbitration clauses inherently conflict with the purposes of the Truth-in-Leasing Regulations and the Federal Arbitration Act.

## LAW AND ANALYSIS

### Ohio Arbitration Act

The first issue to be determined by the Court whether the parties agreed to delegate the determination of arbitrability to the arbitrator.

Ohio's Arbitration Act ("OAA") is set forth in O.R.C. § 2711.01 (A) and reads:

> A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.

The OAA further places the onus on the Court to determine whether the claims at issue are referable to arbitration.  O.R.C. § 2711.02(B) reads:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

"Both the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration." *Alford v. Arbors at Gallipolis,* 2018-Ohio-4653, ¶ 11, 123 N.E.3d 305, 311  quoting *Hayes v. Oakridge Home,* 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408.

"In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor." *Alford,* 2018  Ohio at #14.  "Whether the parties have executed a valid written arbitration agreement is a matter of state contract law." *Id.* at #18 quoting *Brown v. Extendicare,* 2015-Ohio-3059, 39 N.E.3d 896 (2nd Dist.), at ¶ 20.   "Although any challenge to the validity of an arbitration agreement is to be resolved by the court... threshold determinations may be delegated to the arbitrator in the arbitration agreement." *Morgan v. UMH Properties,* No. 1:18 CV 948, 2018 WL 3647203, at *3 (N.D. Ohio Aug. 1, 2018).

5

"When determining the validity of a delegation clause, that clause does not benefit from the presumption in favor of arbitration. Rather, although delegation of the question of arbitrability is allowed, the general presumption is that arbitrability is a question to be determined by the courts." *Id.* citing *Rent-A-Center, West Inc. v. Jackson,* 561 U.S. 63, 68-69 (2010). "In order to overcome this presumption the parties must 'clearly and unmistakably provide otherwise' within their agreement." *Morgan, supra* at #3.

Arbitration agreements are enforceable "except upon grounds that exist at law or in equity for the revocation of any contract." O.R.C. § 2711.01(A). "Unconscionability is a ground for revocation of a contract." *Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St. 3d 352, 361–62 (2008). "Unconscionability includes both ' an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.*, quoting *Lake Ridge Academy v. Carney,* 66 Ohio St.3d 376, 383 (1993). "A determination of whether a written contract is unconscionable is an issue of law." *Taylor,* 117 Ohio St. 3d at 359.

The United States Supreme Court has held that where the parties' arbitration agreement contains a delegation clause, challenges to its validity are to be determined by the Court. However, this was is the context of an arbitration agreement subject to the FAA. See *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 130 S. Ct. 2772, 2774 (2010). ("Under the FAA, where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, if a party challenges specifically the enforceability of that particular agreement, the district court considers the challenge, but if a party challenges the enforceability of the agreement as a whole, the challenge is for the arbitrator."). Ohio courts

6

agree that "if there is a specific challenge to the validity of the arbitration clause for reasons other than the challenge to the entire contract, then the trial court must first resolve the validity of the arbitration clause before ordering a stay and compelling arbitration." *Garber v. Buckeye Chrysler-Jeep-Dodge of Shelby*, 2008-Ohio-3533, ¶ 16

"The party asserting unconscionability bears the burden of proving both procedural and substantive unconscionability." *Hayes,* 122 Ohio St.3d at 67. "Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' age, education, intelligence, business acumen and experience, who drafted the contract, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the [consideration] in question." *Taylor,* 117 Ohio St.3d at 361-62. "Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' " 'age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.' " *Collins v. Click Camera & Video, Inc.,* 86 Ohio App.3d 826, 834 (Ohio App. 2nd Dist. 1993) quoting *Johnson v. Mobil Oil Corp.* (E.D.Mich.1976), 415 F.Supp. 264, 268. "Factors which may contribute to a finding of unconscionability in the bargaining process [i.e., procedural unconscionability] include the following: belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities,

ignorance, illiteracy or inability to understand the language of the agreement, or similar factors." *Taylor.* 117 Ohio St. 3d at 361–62 citing *Restatement of the Law 2d, Contracts* (1981), Section 208, Comment d. "Normally, an incapacity to contract results from mental incapacity or illiteracy." *Ohio Univ. Bd. of Trustees v. Smith,* 132 Ohio App. 3d 211, 219, 724 N.E.2d 1155, 1160 (1999). Ultimately the Court must determine whether the parties to the contract had "a reasonable opportunity to understand the terms of the contract...." *Id.* The Court must consider "whether the circumstances surrounding the party to the contract were such that no voluntary meeting of the minds was possible." *Scovill v. WSYX/ABC,* 425 F.3d 1012, 1017 (6th Cir. 2005), (citing *Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.,* 143 Ohio App.3d 708, 758 N.E.2d 1173. 1181 (2001) ).

"An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable." *Hayes,* 122 Ohio St. 3d at 69. "Factors courts have considered in evaluating whether a contract is substantively unconscionable include the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Id.* Unreasonable and/or undisclosed costs of arbitration may render an arbitration clause unconscionable. See *DeVito v. Autos Direct Online, Inc.*, 2015 Ohio 3336 (Ohio App. 8th Dist. 2015.

The arbitration clauses found in the lease agreements by all accounts are identical and read as follows:

> Any controversy or claim arising out of this lease, or the breach thereof, shall be settled by arbitration to be held in Cleveland, Ohio or other mutually acceptable location in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and a judgment upon the

award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

In addition, Section 5(B) of the Lease Agreements read "[t]his lease shall be governed by Federal Law and regulations where applicable, and wherever there is not applicable Federal Law this lease shall be governed by the laws of the state of Ohio."

The parties dispute whether Plaintiffs are challenging the lease agreements as a whole or are specifically challenging the validity and enforceability of the arbitration clause generally and the delegation clause specifically. Having reviewed the Motion, Opposition and Reply, the Court finds Plaintiffs specifically dispute both the arbitration clause and the delegation clause.

Plaintiffs opposition contains the following arguments: "Defendant never explained the choice of law and arbitration provisions contained in the Lease Agreements to Plaintiffs." ( Brief In Opp. Pg. 5, Vlad Affidavit at ¶¶ 8, 10; Solomon Declaration at ¶¶ 8, 10; Varvaruc Declaration at ¶¶ 8, 10; Tarog Affidavit at ¶¶ 8, 10.) "Plaintiffs were not made aware that they were agreeing to forego filing a lawsuit for any violations in court or what specific laws would apply and under what circumstances. Nor were they advised of the costs associated with arbitration – costs which are significant to Plaintiffs given their annual income and disproportionate to the amount at issue in this case – or the differences between arbitration and court proceedings." (*Id*.) "Plaintiffs did not know or understand that the Lease Agreements contained arbitration and choice of law provisions. Even if they had understood the import and impact of the arbitration and choice of law provisions, Plaintiffs were not given the opportunity to negotiate the terms of the Lease Agreements or insist that the arbitration provision be removed."( *Id*. at pg. 6, Vlad

9

Affidavit at ¶¶ 8-10; Solomon Declaration at ¶¶ 8-10; Varvaruc Declaration at ¶¶ 8-10; Tarog Affidavit at ¶¶ 8-10.) "As is set forth in detail below, Plaintiffs contend that the entire arbitration provision, including the purported delegation agreement, is both procedurally and substantially unconscionable and is unconstitutional." Brief in Opp. pg. 13). "At no time were Plaintiffs advised that the Lease Agreements contained arbitration agreements. Nor did they have any understanding that submitting disputes to arbitration would prevent Plaintiffs from going to Court and having a jury trial and also cost money – both to submit the claims to arbitration and for the arbitrator's time. And they certainly did not know and were not made aware that by referencing the AAA Commercial Rules of Arbitration, they may have given up their right to have this Court determine threshold issues of arbitrability." (Id. at pg. 15).

Plaintiffs argue they did not clearly and unmistakably agree to delegate arbitrability issues to the arbitrator. The delegation clause does not specify that the parties are delegating issues of arbitrability to the arbitrator. Instead, it merely references the AAA Commercial Rules of Arbitration which include a rule that arbitrability issues are to be determined by the arbitrator. It is unclear whether the AAA Rules were provided or discussed with Plaintiffs. Plaintiffs contend this reference to the AAA Rules is insufficient to show they clearly and unmistakably agreed given Plaintiffs' limited ability to understand English and Plaintiffs lack of familiarity with arbitration generally or the AAA Commercial Rules of Arbitration. Defendant, who had superior knowledge and was charged with complying with the Truth-In-Leasing regulations, could have, but did not, explain this provision to Plaintiffs in Romanian or otherwise. The arbitration provision in no way makes clear

10

that by signing the Lease Agreements, Plaintiffs may have delegated issues of arbitrability to the arbitrator. Nor does the arbitration provision specify that Plaintiffs are waiving the right to a jury or that arbitration costs money. The arbitration provision also fails to disclose the costs of arbitration or that Plaintiffs would have to spend a disproportionate amount in costs and arbitration fees to arbitrate their disputes in order to obtain the funds that Defendant wrongfully withheld in violation of the lease agreements and the Truth-In-Leasing regulations.

DGI points the Court to several Ohio appellate decisions holding that incorporation of the AAA rules clearly and unmistakably vests the arbitrator with the authority to decide the issue of arbitrability. *Summit Constr. Co. v. L.L.F.J.A.O., L.L.C.,* 9th Dist. Summit No. 25621, 2012-Ohio-568, ¶ 13 (citations omitted); *von Arras v. Columbus Radiology Corp.,* 10th Dist. Franklin No. 04AP-934, 2005-Ohio-2562, ¶ 15.

Plaintiffs also assert the arbitration clause and delegation clause therein are substantively unconscionable due to the costs of arbitration. Plaintiffs only evidence is their own affidavits in which they assert "I did not know that arbitration cost money and the costs would be disproportionate to the amount of compensation I received from DGI." (See Vlad aff. para. 9).

"[W]e believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Financial Corp.-Alabama v. Randolph* (2000), 531 U.S. 79, 92. "Though some expenses may be inherently speculative, the Court noted that generic information contained in AAA Commercial Rules and

unsupported statements were not enough to satisfy the party's burden of providing factual proof that the costs were prohibitively expensive." *Garcia v. Wayne Homes,* LLC, 2002-Ohio-1884. In *Garcia,* the Ohio appellate court found plaintiffs failed to meet their evidentiary burden to show that the costs of arbitration rendered the arbitration clause substantively unconscionable even though the plaintiffs provided an affidavit outlining their total claimed damages, the AAA cost schedule showing the amount of fees plaintiffs would be required to pay, including the arbitrator's fee and costs of hearing room. The *Garcia* court found this evidence failed to meet plaintiff's burden because "proof of costs alone will not invalidate an arbitration clause. Appellants produced no evidence of the expected cost differential between arbitration and litigation in court. Appellants' incomplete cost estimation comprises less than 2% of the face value of the parties' $135,000 contract and could easily be exceeded by litigation expenses." *Id.* at #13.

A federal court likewise found a plaintiff had not met her burden to show arbitration costs were substantively unconscionable where plaintiff "has not provided information about the comparative costs of litigating and arbitrating her claims." *Garrett v. Hooters-Toledo,* 295 F. Supp. 2d 774, 781 (N.D. Ohio 2003).

Because a plaintiff must show both procedural and substantive unconscionability in order for the Court to find an arbitration agreement or a delegation clause within the arbitration clause unconscionable, Plaintiffs' bare, unsupported attestations that costs were not disclosed and that they were disproportionate to their compensation fails to meet this evidentiary burden. Therefore, the Court finds the delegation clause is not substantively unconscionable.

However, given the serious questions whether the parties clearly and unmistakably agreed to delegate arbitrability questions to the arbitrator in light of Plaintiffs' alleged English illiteracy and lack of understanding of the AAA Arbitration Rules, the Court finds Plaintiff's affidavits raise enough concerns that the issue will be referred to the Magistrate Judge for an evidentiary hearing and Report and Recommendation.

Therefore, the Court grants, in part, Defendant's Motion to Stay Litigation and orders the litigation stayed until the Court, after a hearing and Report and Recommendation from the Magistrate Judge, determines whether the parties agreed to delegate questions of arbitrability to the arbitrator.

IT IS SO ORDERED.


Date: May 26, 2020  /S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
Senior United States District Judge